Nick KIKALOS and Helen Kikalos, Petitioners–Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellant.

Nos. 98–2631, 98–2632.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1998.

Decided Sept. 8, 1999.

Ralph M. Bernstein (argued), Chicago, IL, for Petitioners–Appellees.

Stuart L. Brown, Clifford M. Harbourt, I.R.S., Washington, D.C., Charles Bricken (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, Loretta C. Argrett, Dept. of Justice, Tax Div., Washington, DC, for Respondent–Appellant in No. 98-2631.

Clifford M. Harbourt, I.R.S., Washington, DC, Charles Bricken (argued), Dept. fo Justice, Tax Div., Appellate Section, Washington, DC, Loretta C. Argrett, Dept. of Justice, Tax Div., Washington, DC, for Respondent–Appellant in No. 98-2632.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

On their income tax returns for 1992 and 1994, Nick and Helen Kikalos deducted as a business expense the interest they paid on tax deficiencies that had been assessed for prior years. The Internal Revenue Service disallowed the deduction pursuant to a temporary regulation that deems interest owed on tax underpayments to be nondeductible personal interest, even if the income giving rise to the tax liability derives from the taxpayer's business. *See* Temp. Treas. Reg. § 1.163–9T(b)(2)(i)(A), 26 C.F.R. § 1.163–9T(b)(2)(i)(A). Following its decision in *Redlark v. Commissioner*, 106 T.C. 31, 1996 WL 10243 (1996), *rev'd*, 141 F.3d 936 (9th Cir.1998), which by a divided vote held that regulation invalid, the tax court concluded that the tax underpayments were properly allocable to Nick Kikalos' unincorporated business, *see* 26 U.S.C. § 163(h)(2)(A), and that the interest on the underpayments was therefore deductible as a business expense. *Kikalos v. Commissioner*, 75 T.C.M. (CCH)

1924, 1932–33, 1998 WL 90729 (1998). The Commissioner of Internal Revenue appeals. In accord with every other circuit that has addressed the issue, we sustain the Commissioner's determination that interest owed on individual income tax deficiencies is not deductible as a business expense, irrespective of the source of the income giving rise to the tax liability. *See McDonnell v. United States*, 180 F.3d 721 (6th Cir. May 27); *Allen v. United States*, 173 F.3d 533 (4th Cir.1999); *Redlark v. Commissioner*, 141 F.3d 936 (9th Cir. 1998); *Miller v. United States*, 65 F.3d 687 (8th Cir.1995); *see also Stecher v. United States*, 1998 WL 427369 (D. Col. June 1, 1998); *In re Vale*, 204 B.R. 716, 739–44 (Bankr.N.D.Ind.1996). We therefore reverse the decision of the tax court in this respect.

## I.

Since 1971, Nick Kikalos has operated a sole proprietorship, Nick's Liquors, which purveys beer, liquor, and cigarettes to the public. During the relevant tax years, Nick's Liquors did business at three locations in Hammond, Indiana. Nick and his wife Helen supervised one of the stores, while their son and daughter managed the other two. Hammond is located near the Illinois state line, not far from Chicago. Owing to disparate state taxes, cigarettes were generally less expensive to buy in Indiana while liquor was the better buy in Illinois. The result was a substantial and fiercely competitive cross-border trade in both items. The aim of Nick's Liquors in this environment was to keep prices low and volume high. The strategy appears to have paid off: Gross sales ranged from approximately $8.5 to $9.0 million per year by the early 1990s, and Mr. and Mrs. Kikalos were reporting taxable income in excess of $500,000 annually.

In 1992, the Commissioner made substantial adjustments to the gross income that Nick and Helen Kikalos had reported receiving from Nick's Liquors for the 1986 and 1987 tax years.[1] As a result, the

---

1. The Kikalos had calculated their reported

income based on the cash receipts and dis-

couple owed an additional $286,147.50 in taxes for the 1986 tax year and another $272,146 for the 1987 tax year. The Kikalos were also required to pay interest on those deficiencies in the total amount of $393,024. On the Schedule C submitted with their 1992 tax return, they claimed that amount as a business expense and deducted it from their income.

In 1994, the Kikalos were required to pay additional income tax and penalties of $458.230.43 for the 1988 tax year and $441,669.22 for 1989, again due to adjustments in the gross income that they reported for Nick's Liquors. The interest that they owed on the income tax deficiencies for those years amounted to another $499,895.11. As they had on their 1992 return, the Kikalos deducted that interest from their income on their 1994 tax return.

The IRS subsequently reviewed the Kikalos' tax returns for 1992 and 1994 and determined that the interest they had paid on the income tax deficiencies was not deductible as a business expense. The disallowance of the interest deduction, in addition to other adjustments, rendered the Kikalos liable for additional income tax in those years. They petitioned the tax court for review and redetermination. The tax court, as we have noted, concluded that the interest deductions were proper, relying on its previous opinion in *Redlark.*

## II.

### A.

▬ We review the tax court's judgment using the same standards that we apply when examining a district court's decisions in a civil bench trial. 26 U.S.C. § 7482(a)(1); *e.g., Pittman v. Commissioner,* 100 F.3d 1308, 1312 (7th Cir.1996). That is, we review the court's findings of

fact for clear error, but we consider its legal determinations de novo. *Id.* at 1312–13. Whether the Kikalos were entitled to deduct the interest assessed on their income tax deficiencies depends on the validity of the treasury regulation, and that in turn presents a question of law over which our review is plenary. *Herbel v. Commissioner,* 129 F.3d 788, 790 (5th Cir.1997), citing *Tate & Lyle, Inc. v. Commissioner,* 87 F.3d 99, 102 (3d Cir.1996); *E. Norman Peterson Marital Trust v. Commissioner,* 78 F.3d 795, 797–98 (2d Cir.1996), *Cramer v. Commissioner,* 64 F.3d 1406, 1412 (9th Cir.1995). Given that the decision in this case rests on *Redlark,* we will look to that opinion for the tax court's rationale.

The Internal Revenue Code has long permitted individual taxpayers to deduct from their income all ordinary and necessary expenses that they accrue in the course of carrying on a trade or business. *See* 26 U.S.C. § 162(a). And prior to the Tax Reform Act of 1986, the tax court in several cases had deemed an income tax deficiency to be an ordinary and necessary business expense for purposes of determining a taxpayer's adjusted gross income, net operating loss carryover, and net operating carryback, so long as that deficiency was attributable to the ordinary operation of the taxpayer's business. *See Standing v. Commissioner,* 28 T.C. 789, 1957 WL 1159 (1957), *aff'd,* 259 F.2d 450 (4th Cir. 1958); *Polk v. Commissioner,* 31 T.C. 412, 1958 WL 1213 (1958), *aff'd,* 276 F.2d 601 (10th Cir.1960); *Reise v. Commissioner,* 35 T.C. 571, 1961 WL 1350 (1961), *aff'd,* 299 F.2d 380 (7th Cir.1962); *see also* 26 U.S.C. § 62(a)(1) (adjusted gross income); 26 U.S.C. § 172(d)(4) (net operating loss) (formerly § 122(d)(5) of the 1939 tax code). That nexus would be satisfied, for example, when the deficiency resulted from

bursements that Nick entered in the proprietorship's ledgers each business day. However, Nick neglected to retain any records—in particular, cash register tapes or sales receipts—that would have confirmed the amount of their gross income. *See* 26 U.S.C. § 6001; 26 C.F.R. § 1.446–1(a)(4). In the absence of such documentation, the Commis-

sioner reconstructed the Kikalos' income based on an analysis of their bank deposits. *See* 75 T.C.M. (CCH) at 1932, 1998 WL 90729; *see also Mendelson v. Commissioner,* 305 F.2d 519, 522 (7th Cir.1962), citing *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933) (Cardozo, J.).

mundane accounting errors in the manner of reporting the income of the business (*Reise*, 35 T.C. 571, 1961 WL 1350), or in the valuation of its inventory (*Polk*, 31 T.C. 412, 1958 WL 1213). *See Redlark*, 106 T.C. at 37, 1996 WL 10243.

■] Among the provisions added to the Code by the 1986 act was one precluding noncorporate taxpayers from deducting "personal interest." 26 U.S.C. § 163(h)(1). This marked a significant departure from prior law, under which most forms of interest were deductible. *See, e.g.*, 26 U.S.C. § 163 (1985); *see also* John Y. Taggart, *Denial of the Personal Interest Deduction*, 41 TAX LAWYER 195 (1988). In the new regime, certain types of interest are statutorily deemed not to be "personal," including "interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee)." 26 U.S.C. § 163(h)(2)(A).[2] However, the Commissioner has taken the view that an individual's income tax deficiency cannot be considered "indebtedness properly allocable to a trade or business," even when the income underlying the deficiency originates from the taxpayer's business.[3] Thus, Temporary Treasury Regulation § 1.163–9T(b)(2)(i)(A) includes within the category of nondeductible personal interest any interest due "on underpayments of individual Federal, State, or local income taxes ... regardless of the source of the income generating the tax liability."

There can be no question that the unequivocal language of this regulation forecloses to the Kikalos any deduction for the interest they have paid on their own income tax deficiencies. Only if we, like the tax court, were to conclude that the regulation amounts to an impermissible construction of the statute might the deficiency interest qualify for deduction.

### B.

A majority of the tax court viewed the regulation as being inconsistent with the statute and therefore invalid. It began with the "key phrase" from section 163(h)(2)(A) referring to "interest paid or accrued on indebtedness properly allocable to a trade or business." *Redlark*, 106 T.C. at 39, 1996 WL 10243. Looking to the line of cases pre-dating the statute (*supra* at 793–94), the tax court believed that the language of section 163(h)(2)(A) preserved the deductibility of deficiency interest, at least so long as the income adjustments giving rise to the deficiency could reasonably be linked to the ordinary operation of the taxpayer's business. *Id.* at 37–39, 1996 WL 10243.

Still, the court recognized that the statute was not so clear as to foreclose regulatory interpretation on this subject, *see id.* at 39, 1996 WL 10243; and so it examined the temporary regulation in light of the legislative history. The only portion of the legislative record directly on point is the following passage from the conference committee report:

Under the conference agreement, personal interest is not deductible. Personal interest is any interest, other than interest incurred or continued in connection with the conduct of a trade or business (other than the trade or business of performing services as a[n] employee), investment interest, or interest taken into account in computing the taxpayer's

---

**2.** The phrase "properly allocable" was added to the statute by the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342, 3390. As enacted in 1986, the statute referred to "interest paid or accrued on indebtedness *incurred or continued in connection with the conduct of* a trade or business...." 26 U.S.C. § 163(h)(2)(1986) (emphasis ours). Whether the temporary regulation under scrutiny comports with the 1986 language is a matter we need not con-

sider. The parties' arguments focus on the current statutory language, as does our analysis. *See Redlark*, 141 F.3d at 940 n. 1.

**3.** The underpayment of tax does qualify as "indebtedness" for purposes of the statute. *See* Temp. Treas. Reg. § 1.163–8T(c)(3)(ii), 26 C.F.R. § 1.163–8T(c)(3)(ii); *Redlark*, 106 T.C. at 70–71, 1996 WL 10243 (Halpern, J., dissenting).

income or loss from passive activities for the year. *Personal interest also generally includes interest on tax deficiencies.*

H.R. CONF. REP. No. 99–841, at II–154 (1986), *reprinted in* 1986 U.S.C.A.A.N. 4075, 4242 (emphasis ours). The Commissioner, with the support of the Eighth Circuit's decision in *Miller v. United States*, 65 F.3d 687 (1995), held up the highlighted statement as confirmation that the temporary regulation is faithful to congressional intent. The tax court construed this snippet differently, however. In the court's view, when the conference committee indicated that personal interest *"generally* includes interest on tax deficiencies," it was referring to some but not all of the usual types of tax deficiencies—typically those resulting from income, estate, and gift taxes. The logical exception hinted at by the qualifier "generally" was interest that constitutes an ordinary and necessary business expense. 106 T.C. at 44–45, 1996 WL 10243. The court recognized that this interpretation could not be squared with the joint tax committee staff's post-enactment analysis of the statute, which expressly stated:

> Personal interest also includes interest on underpayments of individual Federal, State or local income taxes notwithstanding that all or a portion of the income may have arisen in a trade or business, because such taxes are not considered derived from the conduct of a trade or business.

Staff of the Joint Committee on Taxation, GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986, at 266 (J. Comm. Print 1987). Although the court conceded that this official interpretation was entitled to respect, it was not part of the legislative history and in this instance drew no clear support from that history. 106 T.C. at 45–46, 1996 WL 10243. "Given the clear thrust of the conference committee report, the General Explanation is without foundation and must fall by the wayside." *Id.* at 46, 1996 WL 10243.

The tax court, in essence, believed that the 1986 act codified the body of case law

deeming tax deficiencies on business-generated income, and the interest owed on those deficiencies, to be ordinary and necessary business expenses that the proprietor could take as a deduction on his individual tax return. The temporary regulation could not, of course, survive that reading of the statute. *Id.* at 47, 1996 WL 10243.

Eight members of the tax court dissented. Among other points, the dissenters emphasized that section 163(h)(2)(A) is ambiguous to the extent it omits to reveal under what circumstances a debt is "properly allocable to a trade or business"; that the statute did not necessarily adopt the rationale of earlier cases deeming interest on income tax deficiencies to be deductible as a business expense; that one could reasonably conclude, as the Commissioner had, that income tax deficiency interest is not "properly allocable" to the taxpayer's trade or business; and that the temporary regulation was consistent with the limited legislative history. *See* 106 T.C. at 58–60, 1996 WL 10243 (Ruwe, J., dissenting); *id.* at 64–75, 1996 WL 10243 (Halpern, J., dissenting).

### C.

■ The Commissioner promulgated the regulation at issue here pursuant to the congressional grant of general rule-making authority reflected in 26 U.S.C. § 7805(a). *See Redlark*, 106 T.C. at 38, 1996 WL 10243. Interpretive regulations of this sort, when subject to a notice and comment procedure, are reviewed deferentially, under the criteria articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its progeny. *Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 977–83 (7th Cir.1998).

One potential wrinkle is that the regulation we are examining, although on the books since 1987, was denominated a "temporary" regulation. Temporary regulations came into vogue with the Commis-

sioner in the 1980s, when a flurry of complex tax legislation demanded expedited regulatory guidance from the Internal Revenue Service. Michael Asimow, *Public Participation in the Adoption of Temporary Tax Regulations*, 44 TAX LAWYER 343, 343 (1991). A regulation of this sort is every bit as binding as a final regulation, but is issued without prior notice and comment. *See id.* & n. 2; *see also, e.g., E. Norman Peterson Marital Trust v. Commissioner, supra*, 78 F.3d at 798; *Greenberg Bros. Partnership # 4 v. Commissioner*, 111 T.C. 198, 205 n. 12, 1998 WL 525708 (1998) (collecting cases). In this case, the text of the temporary regulation was deemed to serve simultaneously as notice of a "proposed" regulation for rule-making purposes. *See* 52 Federal Register 48407, 1987 WL 144732 (I.R.S. Dec. 22). What, if anything, has come of that notice in the ensuing twelve years is unknown to us. In the absence of any confirmation that the temporary regulation has, after the fact, undergone the scrutiny that typifies a pre-adoption notice and comment period, one could argue that section 1.163–9T(b)(2)(i)(A) is entitled to no more deference than a proposed regulation. *See United Transportation Union–Illinois Legislative Bd. v. Surface Transportation Bd.*, 169 F.3d 474, 480 (7th Cir. 1999) ("Lesser deference may be in order depending on the 'circumstances surrounding the agency's adoption of its statutory interpretation.' "), quoting *Bankers Life*, 142 F.3d at 979 (additional citation omitted); David J. Kastanis, Note, *Treatment of Computer Software Under the Foreign Sales Corporation (FSC) Provisions of the Internal Revenue Code*, 19 HASTINGS INT'L & COMP. L.REV. 597, 621 n. 155 (1996).

Whatever questions the "temporary" nature of this regulation might raise as to the degree of deference it is owed, the parties themselves have chosen not to pursue them. The Commissioner has flagged the issue but has assumed that the temporary regulation should nonetheless be examined within the *Chevron* framework. Commissioner Br. at 21. The Kikalos have likewise assumed that *Chevron* applies. *See*

Kikalos Br. at 14, 15, 23–24. The cases themselves draw no distinction between temporary and final regulations in terms of the deference owed to the regulation. Indeed, each of the other courts of appeals that has addressed this regulation has accorded it full *Chevron* deference. *See McDonnell v. United States, supra*, 180 F.3d 721, 722–23; *Allen v. United States, supra*, 173 F.3d at 537–38; *Redlark v. Commissioner, supra*, 141 F.3d at 939–40; *Miller v. United States, supra*, 65 F.3d at 689–90. Deferring to a lesser degree would benefit the Kikalos, who after all are contesting the regulation's validity. Yet, they have pursued no argument to that end. Instead, they have embraced the tax court's view that the regulation is in direct conflict with the statute and, consequently, must fall no matter how much deference we owe the Commissioner's interpretation. *E.g.*, Kikalos Br. 14–17, 24–25. We therefore reserve for another day what degree of deference, if any, temporary regulations issued without prior notice and comment command. The parties have assumed that full *Chevron* deference is in order and so shall we; the Kikalos certainly have waived any contention to the contrary. *See American Automobile Mfrs. Ass'n v. Commissioner, Massachusetts Dep't of Environmental Protection*, 31 F.3d 18, 25–26 (1st Cir.1994).

■ *Chevron* calls for a two-step inquiry. First, we look to the language of the pertinent statutory provision. "If the plain meaning of the text either supports or opposes the regulation, then we stop our analysis and either strike or validate the regulation." *Bankers Life*, 142 F.3d at 983. If the statutory language is either silent or unclear, however, we then proceed to assess the reasonableness of the Commissioner's regulation. *Id.* "If the regulation is a reasonable reading of the statute, we give deference to the agency's interpretation." *Id.* Our authority at this second step of the analysis is therefore limited. It is not our role to determine the most appropriate interpretation of the

statute, but simply to assess whether the regulation reflects a reasonable construction. *Chevron*, 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11 (collecting cases). For "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 449–50, 19 L.Ed.2d 537 (1967), quoting 26 U.S.C. § 7805(a).

■ The first thing we must do, then, is consider whether section 163(h) speaks clearly to the deductibility of interest on income tax deficiencies emanating from the taxpayer's sole proprietorship. It does not. The statute preserves the deductibility of interest on "indebtedness *properly allocable* to a trade or business" (emphasis ours), but supplies no test for determining which debts are "properly allocable" to a business and which are not. *See Redlark*, 106 T.C. at 67, 1996 WL 10243 (Halpern, J., dissenting). For that reason, each court of appeals examining the statute has deemed it to be facially ambiguous. *See McDonnell*, 180 F.3d 721, 722–23; *Allen*, 173 F.3d at 536; *Redlark*, 141 F.3d at 940; *Miller*, 65 F.3d at 690. Even the tax court majority, after halfheartedly suggesting that the statute might have a plain meaning, conceded ultimately that there was sufficient ambiguity in the language to afford the Commissioner room for reasonable regulatory interpretation. *See Redlark*, 106 T.C. at 39, 1996 WL 10243. The

fact that the members of that court could not agree on a single reading of the statute itself serves as evidence of the statute's ambiguity. *Allen*, 173 F.3d at 536.

Given the statutory ambiguity, there is, as the Eighth Circuit has observed, "an implicit delegation of authority to the Commissioner to clarify whether income tax deficiency interest is 'properly allocable to a trade or business.'" *Miller*, 65 F.3d at 690; *see also Redlark*, 141 F.3d at 940. That delegation brings us to the second step of the *Chevron* analysis, where we consider whether the Commissioner has filled the statutory gaps reasonably.

We see nothing in the temporary regulation that is inherently irrational or in conflict with the statutory treatment of interest. The Commissioner has taken the view that because it is the individual in this case who bears the obligation to pay the income tax, the delinquency and the resulting interest are debts that are likewise personal, even if the income derives from the taxpayer's business. That is a reasonable application of the imprecise standard that Congress has set out in the statute. *Miller*, 65 F.3d at 691.[4] A contrary interpretation might also make sense. With the support of the cases pre-dating the statute, one can argue, with some force, that where the income tax deficiency results from the business' manner of reporting income, as it may have in this case, the deficiency and the interest accrued on that deficiency are debts that should be attrib-

4. As Judge Halpern of the tax court explained:

Plainly, an expenditure made for Federal income taxes is not an expenditure made in consideration of any specific property or service received by the taxpayer. The payment of Federal income taxes is a civic duty, not a matter of business contract or investment advantage. All taxpayers, as well as others (citizens and noncitizens) receive benefits on account of the funding of the Federal Government. The payment of Federal income taxes reduces a taxpayer's wealth otherwise available for consumption. Thus, Federal income tax payments exhibit characteristics not common to business (or investment) expenditure. Justice

Holmes made a point that serves nicely to emphasize the nonbusiness aspect to tax payments. "Taxes are what we pay for civilized society." *Compania General de Tabacos de Filipinas v. Collector of Internal Revenue*, 275 U.S. 87, 100, 48 S.Ct. 100, 72 L.Ed. 177 (1927) (Holmes, J., dissenting). 106 T.C. at 71–72, 1996 WL 10243 (Halpern, J., dissenting); *see also id.* at 60, 1996 WL 10243 (Ruwe, J., dissenting) ("Income from an unincorporated business is merely one of the many components necessary to determine what is still in essence a tax on an individual's personal accessions to wealth from whatever source derived."), citing *James v. United States*, 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1961).

uted to the business rather than the individual. *See* 106 T.C. at 65–66, 1996 WL 10243 (Halpern, J., dissenting). Yet, nothing in the statute points inevitably to this alternate construction. The statute merely preserves a deduction for interest on debts that are "properly allocable" to the taxpayer's business, terminology which, as we have noted, cries out for clarification. As the Ninth Circuit has observed:

> When Congress uses such broad, generalized language in defining an important term in a statute, a claimant must make a compelling argument, based on the language and history of the statute itself, that Congress can only have intended one meaning to attach to that language before we will find that the administering agency has no authority to employ a different construction.

*Redlark*, 141 F.3d at 940.

This the Kikalos are unable to do. The statute itself does not lend compelling support to their contention that the Commissioner has erred, nor does the legislative history. The statutory history does not offer many clues as to what Congress intended. As we noted in discussing the tax court's holding in *Redlark*, the only pertinent statement in the legislative history is the conference committee's observation that "[p]ersonal interest also generally includes interest on tax deficiencies." H.R. Conf. Rep. No. 841, *supra*, at II–154. The temporary regulation is obviously consistent with the general rule that Congress envisioned. The term "generally" does invite exceptions, and to that extent the passage certainly could be harmonized with a rule deeming income tax deficiency interest to be deductible when the deficiency is attributable to the taxpayer's method of doing business. *But see Redlark*, 106 T.C. at 58–59, 1996 WL 10243 (Ruwe, J., dissenting). But to assert, as the tax court did, that the conference committee report evidenced a "clear thrust" toward deductibility, 106 T.C. at 46, 1996 WL 10243, gives far too much weight to a single sentence that leaves ample wiggle room for both sides of this debate.

On the other hand, the post hoc explanation prepared by the staff of the Joint Committee on Taxation lends direct support to the temporary regulation. Unequivocally, the General Explanation or "Blue Book" explains that interest on underpayments of income taxes constitutes non-deductible, personal interest, even when the income derives from the taxpayer's business, "because such taxes are not considered derived from the conduct of a trade or business." GENERAL EXPLANATION, *supra*, at 266. This gloss on the meaning of the statute does not carry the same weight as legislative history, but in view of its authorship, it is nonetheless "highly indicative of what Congress did, in fact, intend." *Estate of Hutchinson v. Commissioner*, 765 F.2d 665, 670 (7th Cir. 1985), quoted with approval by *Miller*, 65 F.3d at 690; *see also Allen*, 173 F.3d at 538; *Redlark*, 141 F.3d at 941. At the very least, the fact that the committee staff shares the Commissioner's understanding of the statute confirms that the Commissioner has not taken an unreasonable view of the way in which the interest on income tax deficiencies should be treated. *Id.*

Ultimately, the Kikalos must lean on the cases pre-dating the statute in the effort to show that the temporary regulation is unreasonable, and those cases simply cannot carry the weight of the challenge. Certainly the cases give credence to the view that interest accrued on income tax underpayments can (in at least some circumstances) be considered a business expense. To that extent, they lend support to the construction of section 163(h)(2)(A) that the Kikalos propose. Even so, these precedents in no way foreclose the alternate construction that the Commissioner has adopted. *Standing, Polk,* and *Reise* date to an era when most forms of interest were deductible. *Allen*, 173 F.3d at 536. The Tax Reform Act of 1986 effected a sea change on that issue, withdrawing the deduction for a broad category of "personal" interest. Because they were decided long before Congress enacted the provision at

issue here, these cases simply do not speak to the question of whether the interest business owners must pay on income tax deficiencies is non-deductible "personal interest" under section 163(h)(1) or deductible interest accrued on a debt that is "properly allocable" to a trade or business under section 163(h)(2)(A). *See Allen*, 173 F.3d at 536–37 & n. 3; *Redlark*, 141 F.3d at 941; *Miller*, 65 F.3d at 690–91. At the same time, as Judge Halpern pointed out in *Redlark*, *Standing*, *Polk*, and *Reise* dealt with the distinction between business and personal interest *solely* in the narrow context of income tax deficiencies. To assume that their holdings "have been woven into the fabric of the Code" overlooks the important point that section 163(h)(2)(A) is not limited to interest on income tax deficiencies, but instead reaches interest on all kinds of indebtedness. 106 T.C. at 74, 1996 WL 10243. Determining what kinds of debts are "properly allocable to a trade or business" thus requires more illumination than these few 40–year–old precedents can supply. Congress has assigned that task to the Commissioner, without supplying any guidance of its own on the subject and without any indication that it meant to codify the case law on which the Kikalos now rely. The reasoning of the older cases might have guided the Commissioner to a different regulatory interpretation of the statute, but without a more express command from the legislature, we cannot say that the judicial rationale dictated any one treatment of income tax deficiency interest. In that regard, it is worth noting that in years since the Commissioner promulgated the temporary regulation, Congress has not seen fit to overrule the Commissioner. *Allen*, 173 F.3d at 538; *Miller*, 65 F.3d at 690.

### III.

Temporary Treasury Regulation 1.163–9T(b)(2)(i)(A) precludes the Kikalos from deducting, as a business expense, the interest accrued on income tax deficiencies assessed for prior tax years. We conclude that the temporary regulation represents a reasonable interpretation of 26 U.S.C. § 163(h)(2)(A), which does not unambiguously resolve the subject. In this respect, we REVERSE the judgment of the tax court. We thank the government for its excellent briefs.