**Frederick J. TEDORI, Robin J. Tedori, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 98–56049.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 2000.

Filed May 1, 2000

As Amended May 18, 2000.

Denton N. Thomas and Susan Gorman, Andrews & Kurth, Houston, Texas, and William H. Lancaster, Andrews & Kurth, Los Angeles, California, for the plaintiffs-appellants.

Jonathan S. Cohen, Tamara W. Ashford, Tax Division, United States Department of

Justice, Washington, D.C., for the defendant-appellee.

Before: PREGERSON and WARDLAW, Circuit Judges, and SHADUR, District Judge.[1]

SHADUR, District Judge:

Taxpayers Frederick and Robin Tedori (collectively "Tedoris"), sole shareholders of an Interest Charge Domestic International Sales Corporation ("DISC"), have claimed as a deduction on their 1989 and 1990 joint federal income tax returns the interest they had paid to the United States on the deferred amounts of their DISC-related tax liability. This litigation stems from the Government's denial of those deductions on the premise that the interest paid was non-deductible personal interest under 26 U.S.C. § 163(h).[2] Acting on cross-motions for summary judgment, the district court ruled for the Government and against Tedoris, dismissing their suit for refund. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons given below, we affirm.

*Background*

No facts in this action are in dispute. Tedoris are the sole shareholders and managers of Enterplast, Inc. ("Enterplast"), a Texas corporation exporting and selling plastic raw materials. Beginning with calendar (and tax) year 1986, Enterplast elected to be taxed as a DISC because it met these conditions (paraphrased, except where quotation marks are employed, from the corresponding subsections of Section 992(a)(1)):

(A) at least 95% of its gross receipts were "qualified export receipts,"

(B) in terms of their adjusted bases, at least 95% of its assets were "qualified export assets,"

(C) it did "not have more than one class of stock and the par or stated value of its outstanding stock [was] at least $2,500 on each day of the taxable year,"

(D) it had elected "to be treated as a DISC," and

(E) it was "not a member of any controlled group of which a [Foreign Sales Corporation] is a member."

"Qualified export receipts" and "qualified export assets" are respectively defined in Sections 993(a) and (b).

Though obligated to file informational income tax returns, a DISC is not a taxable entity, but is instead taxed at the shareholder level under Section 995.[3] Each DISC shareholder is ratably taxed currently on a portion of the DISC's income as a constructive dividend ("deemed distribution"), regardless of whether that income is actually distributed.[4] But the

1. Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

2. Citations to the Internal Revenue Code ("Code") will take the form "Section ___," omitting the prefatory "26 U.S.C." Temporary Treasury Regulation § 1.163–9T(b)(2)(i) (1987), the only adopted Regulation implicated in this case, will be referred to simply as the "Regulation."

3. Section 501 of the Revenue Act of 1971 introduced the DISC concept as a means of aiding United States exports and correcting perceived trade imbalances. Congress then altered the DISC rules in the Deficit Reduction Act of 1984, which established the For-

eign Sales Corporation ("FSC") provisions for larger companies and the "Interest Charge DISC" rules for smaller ones such as Enterplast. As for the latter category, if the DISC's shareholders agree to pay an interest charge on deferred taxes, the DISC is allowed to defer in each year all of its taxable income attributable to as much as $10 million in qualified export receipts (see Section 995(b)(1)(E)).

4. Under Section 995(b) a "shareholder of a DISC shall be treated as having received a distribution taxable as a dividend" equal to his or her pro rata share of certain items of DISC taxable income in a given year. That income amount is derived from the formula set out in Section 995(b)(1)(A) through (G).

shareholders are not taxed on the remaining part of the income until (1) it is actually distributed or is deemed distributed, (2) the shareholders dispose of their stock in the DISC or (3) the DISC loses its special status (see Section 995(c)). As footnote 3 indicates, each DISC shareholder must pay an interest charge on the deferred amount.

As required by Section 995(f), Tedoris reported Enterplast's deferred DISC-related tax liability for the 1989 and 1990 tax years as $616,149 and $1,263,399, respectively. Having paid an interest charge on that liability in the amounts of $46,656 for 1989 and $115,514 for 1990, Tedoris then sought to deduct those interest amounts in their joint income tax returns for those years.[5]

On audit the Internal Revenue Service ("IRS") rejected both of those deductions because the interest payments were deemed nondeductible personal interest. That disallowance created tax deficiencies for Tedoris of $22,720 for 1989 and $32,344 for 1990. Both deficiencies were paid, and Tedoris then filed timely claims for refund, contending that the interest payments were not personal interest because they were properly deductible either as "properly allocable to a trade or business" under Section 163(h)(2)(A) or as "investment interest" under Section 163(h)(2)(B).

After six months had passed with no action taken by the IRS, Tedoris filed suit in the district court. On cross-motions for summary judgment, the district court ruled on April 3, 1998 that the interest was nondeductible.[6] In so ruling the district court held alternatively (1) that the Regulation prohibited the deduction[7] and (2) that "the indebtedness at issue is not properly allocable to [Tedoris'] trade or business."[8]

Tedoris filed a timely notice of appeal, and (as stated earlier) jurisdiction exists under 28 U.S.C. § 1291. We review the district court's grant of summary judgment and its interpretation of the Code de novo (*Ingham v. United States*, 167 F.3d 1240, 1243 (9th Cir.1999)).

*Deductibility of the Interest at Issue*

Section 163(a) allows deductions for "all interest paid or accrued within the taxable year on indebtedness." Despite that statement of a "general rule," more recent amendments to Section 163 have dramatically curbed the availability of the interest deduction to individual taxpayers. That has been accomplished by the enactment of the Section 163(h) prohibition of deductions for "personal interest"-a generic prohibition with limited stated exceptions, which include "interest paid or accrued on indebtedness properly allocable to a trade or business ..." and "investment inter-

5. In their 1989 return Tedoris reported the $46,656 as a miscellaneous itemized deduction. In the 1990 return the $115,514 interest charge was deducted. from the dividend income that Tedoris reported from Enterplast.

6. Thereafter, however, after the entry of its summary judgment order, the district court entered a May 6, 1998 order approving the parties' stipulation that Tedoris are entitled to deduct 20% of the interest paid in 1989 and 10% of the interest paid in 1990 pursuant to Sections 163(d)(6)(A) and (B). Those provisions relate to a phase-in for the disallowance of investment interest over the years 1987 to 1990.

7. Before the district court Tedoris had strenuously argued that the Regulation was invalid in light of the "plain language" of Section 163(h)(2)(A), citing *Redlark v. Commissioner*,

106 T.C. 31, 1996 WL 10243 (1996) to support that contention. But the district court disagreed, holding that the term "properly allocable" in Section 163(h)(2)(A) was ambiguous and that the Regulation was reasonable in light of that ambiguity. Since then *Redlark* itself has been overturned by this court (*Redlark v. Commissioner*, 141 F.3d 936 (9th Cir. 1998)), in an opinion handed down just seven days after the district court had granted summary judgment against Tedoris.

8. It should be noted that the district court never discussed whether the "investment interest" exception applied, even though that had been argued in the Tedoris' summary judgment brief. As we discuss later, that contention is also without merit.

est." Thus Section 163(h) reads in relevant part:

> (1) In general.—In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.
>
> (2) Personal interest.—For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than—
>
>> (A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),
>>
>> (B) any investment interest (within the meaning of subsection (d))....

Tedoris urge that the interest charge for their DISC-related deferred tax liability is not "personal interest" because it comes within each of the Section 163(h)(2)(A) and (B) exceptions (only one of those arguments needs to succeed in order for Tedoris to prevail). No caselaw has dealt with the precise question whether either of those exceptions applies to such a DISC-generated interest charge.

### Does the Regulation Control?

Because *Redlark*, 141 F.3d at 939–40 held that the phrase "properly allocable" in Section 163(h)(2)(A) was ambiguous and that the Regulation was a reasonable interpretation of the Code, the Regulation's validity is beyond question here. Indeed, four other circuits have held that the Regulation is valid and that income tax deficiencies cannot be considered "indebtedness properly allocable to a trade or business" even when the income underlying the deficiency originates from the taxpayer's own business (in order of decision, *Miller v. United States*, 65 F.3d 687 (8th Cir.1995); *Allen v. United States*, 173

F.3d 533 (4th Cir.1999); *McDonnell v. United States*, 180 F.3d 721 (6th Cir.1999) and *Kikalos v. Commissioner*, 190 F.3d 791 (7th Cir.1999)). While *Redlark* involved the deduction of interest payments made on tax deficiencies by a couple running an unincorporated business, the same ambiguous phrase is implicated in this case, where the question is whether interest on deferred DISC-related tax liability is "properly allocable" to a trade or business.

At the outset the Government argues that the Regulation (quoted here with emphasis added) is not only valid but is dispositive of this case:[9]

> [P]ersonal interest includes interest—
>
>> (A) Paid on *underpayments* of individual Federal, State or local income taxes and on indebtedness used to pay such taxes (within the meaning of § 1.168–8T), *regardless of the source* of the income generating the tax liability.

While the Government says that deferred DISC-related tax liability is an "underpayment," so that the deduction of interest on that amount is prohibited by the Regulation, Tedoris counter that a "deferment" is something distinct from an "underpayment," hence rendering the Regulation inapplicable.

Section 995(f)(6) says that the DISC interest charge is "treated, for purposes of this title, as interest payable under section 6601...." But Section 6601, entitled "Interest on Underpayment, Nonpayment, or Extensions of Time for Payment of Tax," does not enlighten us beyond its heading. Nevertheless both sides seek comfort from that title (despite the firmly established proposition that a statutory title is not part

---

9. No explanation has been forthcoming from the government as to why such a "temporary regulation," issued in 1987 shortly after enactment of the Tax Reform Act of 1986, should remain "temporary" well over a decade later (see *Kikalos*, 190 F.3d at 795–96). But we need not address any doubts raised by that factor, for our analysis rejects the Government's position on the merits.

of the statute itself).[10] If that were the issue, we would agree with Tedoris that a deferment is more akin to, though not synonymous with, an extension of time.

But that is not the real issue as we view it. Instead the plain meaning of "underpayment," confirmed by its use throughout the Code, reveals that the term refers to a situation in which money is presently owed but not paid by a taxpayer.[11] Certainly the interest payments at issue in this case were not underpayments in the sense that they were literally tax deficiencies on money presently owed.[12] Instead Section 995(f), by postponing payment of Tedoris' obligation, clearly relieved them of any current duty to pay taxes on the deferred DISC income except for the interest charge. In other words, as the statute says, the government "deferred" Tedoris' obligation to pay taxes: Tedoris did not fail to pay money presently owed-that is, they did not *underpay.*

While the Government does attempt to call to its aid Proposed Treas. Regs. §§ 1.995(f)–1(a)(2)(i)(52 Fed.Reg. 3266) (Feb. 3, 1987) and 1.995(f)–1(j)(1)(52 Fed.Reg. 3271) (Feb. 3, 1987), which describe a proposed treatment for DISC interest charges, those "proposed regulations carry no more weight than a position advanced on brief" (*Estate of Howard v. Commissioner,* 910 F.2d 633, 637 n. 1 (9th Cir.1990) (J. Rymer, dissenting)).[13] Here their proposed departure from the normal meaning of language does not alter our conclusion. Because the deferral of DISC-related tax liability cannot fairly be labeled as an underpayment, the Regulation is inapplicable.[14]

### Applicability of the "Trade or Business" Exception

As a matter of statutory construction, Tedoris (quoting from *Crooks v. Harrel-*

---

10. Note that while "underpayments" and "extensions of time" are given the same treatment by Section 6601 in terms of the accrual of an interest obligation when either is present, that similar treatment does not necessarily mean (or even suggest) that the terms must be synonymous for present purposes. Just as procedure is not substance, so similar treatment is not necessarily definitional.

11. Although the Regulation does not itself define "underpayment," that term is defined in multiple places in the Code and Regulations in varying contexts. Typical among those is 26 C.F.R. § 1.6664–2, relating to "Income Taxes, Procedure and Administration: Additions to the Tax, Additional Amounts, and Assessable Penalties," which defines "underpayment" in part by using this formula:
Underpayment = W (X + Y – Z), where W = the amount of income tax imposed; X = the amount shown as the tax by the taxpayer on his return; Y = amounts not so shown previously assessed (or collected without assessment); and Z = the amount of rebates made.

12. This scenario is thus unlike that of the taxpayers in *Redlark,* because Tedoris were not obligated to pay a certain amount on their year-end taxes.

13. Accord, *In re AppleTree Markets, Inc.,* 19 F.3d 969, 973 (5th Cir.1994) ("proposed regulations are entitled to no deference until fi-

nal"); *LeCroy Research Sys. Corp. v. Commissioner,* 751 F.2d 123, 127 (2d Cir.1984)("Proposed regulations are suggestions made for comment; they modify nothing"). Indeed, whatever may be said about "temporary" regulations that have not gained permanent status after 13 years (see n. 9), any notion of ascribing weight to anything that has remained in the "proposed regulation" limbo for a like period is totally unpersuasive. But cf. *Vanscoter v. Sullivan,* 920 F.2d 1441, 1449 (9th Cir.1990), noting that although a proposed regulation or rule does not have "the force of law," if it is "reasonable" it may be entitled to deference by the court.

14. Before us the government also contends, in an argument devoid of logic, that a deferment of income is not equivalent to an extension of time because:
DISC income, to the extent it is not deferred, is treated as received directly by the DISC's shareholders, and the tax on that income currently becomes due and payable. Thus, the DISC-related tax deferral can be equated with a consensual underpayment of tax. . . .
That argument lacks force because a "consensual underpayment" in that sense is really an oxymoron—just a synonym for "deferment."

*son*, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930)) attempt to pose this as a single dispositive question:

> Based on the language of Section 163(h)(2)(A) and (B) of the Code, ascribing the common and ordinary meaning to the words used therein, does allowance of either exception to the Tedoris constitute an "absurdity ... so gross as to shock the general moral or common sense"?

But the vice of that formulation is that it proceeds from a false premise, thus assuring a false conclusion. In this instance "the common and ordinary meaning" of the statutory phrase "properly allocable to a trade or business" is not at all plain, for *Redlark*, 141 F.3d at 939–40 teaches that the language is intentionally ambiguous.[15]

We look then to sources extrinsic to the statutory language itself. No guidance is provided by the structure or legislative history of Section 163(h), though the parties strive to urge otherwise. Tedoris assert that because Section 163(h) was enacted after Section 995(f), "if Congress had intended to now deny the previously allowed deduction for interest paid under Section 995(f), presumably it would have specifically so provided." Taking the opposite view, the Government says that "[p]resumably, if Congress had intended to permit a deduction for the interest paid under Section 995(f) by an individual, it would have specifically provided for it when it spelled out certain types of deductible interest in I.R.C. § 163(h)(2)." Neither of those attenuated inferences offers any real value to the task at hand.

**15.** Amazingly, Tedoris never discuss *Redlark* or any of the other cases unanimously holding that the language in Section 163(h)(2)(A) is ambiguous.

**16.** Like a partnership (see Section 701) or a Subchapter S corporation (see Section 1363), a DISC is a nontaxable entity.

**17.** Absence of personal liability is the most obvious, though by no means the only, per-

Instead the text and the very nature of the DISC provisions are far more revealing. Section 995(f)(1) makes the obligation to pay the interest charge on the deferred tax liability personal to the DISC shareholder:

> A shareholder of a DISC shall pay for each taxable year interest in an amount equal to the product of—
>
> (A) the shareholder's DISC-related deferred tax liability for such year, and
>
> (B) the base period T-bill rate.

Enterplast, however, is a separate legal entity whose business is not the business of its shareholders (see, e.g., *Erickson v. Commissioner*, 598 F.2d 525, 528, 530 (9th Cir.1979)).[16] While Tedoris are Enterplast's sole shareholders and also manage the corporation, that is really not relevant. Having chosen to operate in corporate form and to derive whatever benefits that structure provides,[17] Tedoris must live with the consequences of that choice. As shareholders, Tedoris cannot label Enterplast's business as "our business" any more than any shareholder in any closely held (or publicly held) corporation can do so. From that perspective, Tedoris are on far weaker ground in "trade or business" terms than the taxpayers in *Redlark*, who were a husband and wife operating an unincorporated business.

In sum, a shareholder's interest payments on a DISC's deferred tax liability are not "properly allocable to a trade or business" because the only "trade or business" involved is that of the DISC corporation and not that of the shareholders. Hence those interest payments are personal to the shareholder, and Tedoris have

ceived advantage of the normal corporate structure. In the special situation of the DISC corporation, the Code's provisions create the economic equivalent of an interest-only loan from the Government (the effect of deferring income tax liability on a large chunk of ordinary income) that is unavailable to an individual or individuals owning and operating the identical business in noncorporate form.

submitted nothing that can entitle them to the double benefit of deferred income taxes plus the tax deductibility of the interest paid as the price for that deferral.

*Applicability of the "Investment Interest" Exception*

■ Alternatively Tedoris (quoting Section 163(d)(3)(A), which in turn defines "investment interest" as used in Section 163(h)(2)(B)) argue that the interest charge is properly deductible as "investment interest" because it is "indebtedness properly allocable to 'property held for investment.' " Again Tedoris begin from a false premise, thus assuring a false conclusion (the equivalent of GIGO—"garbage in, garbage out"—in the world of the computer). That is so because the deferred DISC-related tax liability is simply not the result of an "investment activity."

If by contrast Tedoris had borrowed money to enable them to make an additional capital contribution to Enterplast, they could fairly deduct the interest on that loan as having been "paid ... on indebtedness properly allocable to property held for investment" (Section 163(d)(3)(A)). But once more Tedoris are bound by the structure that they themselves have chosen for the conduct of Enterplast's business. Just because the DISC-permitted deferral of income tax on the undistributed portion of Enterplast's income may provide Tedoris with the economic equivalent of an interest only loan from the Government (see n. 17), that does not permit Tedoris to ignore the reality that they have *not* opted to have Enterplast distribute those earnings to Tedoris (thus triggering Tedoris' *current* obligation to pay income taxes) so that Tedoris could then choose whether or not to reinvest those funds in Enterplast.

As in so many areas where the tax impact of taxpayer conduct is at issue, taxpayers are allowed an almost unlimited universe of choices as to how they conduct their affairs. But given that freedom of choice, they cannot complain of the tax consequences that attach to the path that they have chosen, nor are they free to assert that the tax consequences should be identical to those that would flow from a different course of conduct that the taxpayers have not elected to follow.

So just as with Tedoris' earlier argument, even though their decision as Enterplast's managers to defer taxes may also benefit the business as a collateral consequence of providing Tedoris with the primary benefit of deferred taxes, the interjection of the corporate entity separates the Tedoris as corporate managers from Tedoris as shareholders. And because it is Tedoris as shareholders—more precisely, as individuals—who have paid the interest charge, the interest payment is a personal expenditure and is treated for purposes of Section 163(h) as personal interest.

*Conclusion*

While the Regulation does not control this case, an interest charge for deferred DISC-related tax liability is neither "properly allocable to a trade or business" nor appropriate "investment interest" under Section 163(h)(2). Because Tedoris' payments were therefore of "personal interest" within the meaning of the Code, no deductions are allowed for those payments except for those already consented to by the government under the phase-in rules. We AFFIRM the decision of the district court.