T.C. Memo. 2002-223


UNITED STATES TAX COURT


WILLIAM C. AND CHERYL M. FOWLER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11885-98.          Filed September 6, 2002.


John Edward Ritzert, Jr., and J. Carlton Howard, Jr., for petitioners.

Bradley C. Plovan, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies and accuracy-related penalties with respect to petitioners' Federal income tax as follows:

| Year | Deficiency | Penalty, I.R.C. Sec. 6662(a) |
|------|-----------|------------------------------|
| 1994 | $35,283 | $3,683 |
| 1995 | 17,023 | 3,202 |

The issues presented are: (1) Whether rental real estate losses claimed by petitioners are subject to the passive activity loss limitations under section 469; (2) whether interest paid on tax deficiencies is deductible as Schedule C business expenses; and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners' mailing address at the time of the filing of the petition was Cudjoe Key, Florida. Petitioners filed joint Federal income tax returns for 1994 and 1995.

### United Air Temp

Petitioner William C. Fowler (petitioner) was employed by and the president of United Air Temp, Air Conditioning and Heating, Inc. (United Air Temp). Petitioner Cheryl M. Fowler (Mrs. Fowler) was employed as a corporate executive for United Air Temp. United Air Temp was a closely held C corporation that was 100-percent owned by petitioner.

During the years in issue, United Air Temp was a heating and air conditioning contractor with branch offices in Maryland and Virginia. United Air Temp sold and installed central heating systems, central air conditioning systems, indoor air quality systems, attic fans, humidifiers, hot water tanks, gas fireplaces, gas logs for fireplaces, and central vacuum systems. United Air Temp worked with architects and general contractors in connection with its business. United Air Temp also installed duct work; installed line sets; installed radiators; framed and cut walls; cut floors and ceilings; built chases and bulkheads; cut holes in roofs and repaired roofs; installed water and gas pipes; installed registers; installed electrical lines, connections, and controls; upgraded electrical systems; installed flute pipes and venting; demolished concrete slabs and installed replacement slabs; removed oil tanks; installed thermostats; built fireplaces; and performed masonry, carpentry, and electrical work.

Some of the work performed by United Air Temp required building permits, and the building permits were issued either to United Air Temp or to its customers. Central heating or air conditioning systems that have been installed in a residence as permanent improvements are structural components of such building and are real property. None of United Air Temp's installations was temporary.

Petitioner kept electronic calendars of his activities. He planned his activities about a month in advance and would enter in his calendar the activities that he planned to accomplish. He entered on the calendar the date and time, including the beginning and ending times based upon his estimate of length of each activity, and the description of the planned activity. He did not go back and correct his calendar entries to reflect the actual time spent or to reflect a change in his planned activity. In preparation for trial in October 2001, petitioner reviewed his calendars and supplemented the entries with handwritten notations based on his recollection.

Based on petitioner's calendar entries, petitioner prepared summaries of his time spent working at United Air Temp. Petitioner's summaries estimate that he worked at United Air Temp about 664 hours and 712.5 hours in 1994 and 1995, respectively. Generally, petitioner estimated that he worked in the office an average of 2 or 3 days per week for approximately 10 to 15 hours per week. Unrecorded activities included petitioner's telephone conversations with Dorin Ivanescu, executive vice president of United Air Temp, outside of business hours that occurred about 4 to 10 times each month, with calls lasting an average of 10 to 15 minutes each, or approximately 30 hours per year.

- 5 -

Real Estate Rental Activities

Petitioners owned the following rental real estate properties: (1) A farm and buildings in New York (New York property), (2) an apartment building in Pennsylvania (apartment building), (3) a commercial building in Pennsylvania (commercial building), and (4) a rental unit in Florida (Florida property).

Petitioner's work on the rental properties included roofing repair, electrical, heating system repairs, heating system replacement, foundation work, and routine maintenance. Based on petitioner's calendar entries, petitioner prepared summaries of the hours spent on each of the rental real estate activities.

In addition to the activities recorded in his calendar, he computed an estimate of the hours spent traveling to and from the rental properties and estimated the hours that he spent on administrative tasks. Petitioner estimated that his travel time from the Washington, D.C., area to Pennsylvania and New York was about 7 hours each way and to Florida was about 21 hours each way. In 1994, petitioner made four trips to Florida and eight trips to either New York or Pennsylvania. In 1995, petitioner made two trips to Florida and nine trips to either New York or Pennsylvania. Petitioner estimated that each year he spent approximately 80 to 100 hours on administrative work that related to the rental activities.

Petitioner's estimate of the hours that he spent on real estate rental activities is as follows:

|                     | 1994    | 1995    |
|---------------------|---------|---------|
| New York property   | 456.0   | 409.0   |
| Apartment building  | 229.0   | --      |
| Commercial building | 163.5   | 17.0    |
| Florida property    | 357.0   | 336.5   |
| Travel              | 280.0   | 210.0   |
| Administrative      | 70.0    | 80.0    |
| Total               | 1,555.5 | 1,052.5 |

Mrs. Fowler performed administrative services related to the rental properties.  She reviewed mail and invoices, made deposits of rental income, prepared accounting records, prepared checks to pay rental expenses, filed business records, maintained and backed up computerized accounting records, compared actual expenses with budgeted expenditures, and met with the certified public accountant in connection with the preparation of income tax returns.  Mrs. Fowler did not keep a calendar or a log of the hours that she spent performing these activities, but she estimated that she spent about 600 hours a year on these administrative tasks.

Petitioners used the services of independent contractors to assist in the management and maintenance of the rental properties.  Petitioners hired a manager for the apartment building.  The manager was responsible for answering telephone calls, collecting rents, and depositing the monthly checks.  The manager was paid a percentage of the money that she collected.

For the Florida property, petitioners had independent contractors that they would call to perform work if they were not physically present to do the repairs or maintenance.  Petitioners hired Katherine Morgan to landscape and Sandy Chief to perform maintenance on the Florida property.

The New York property was approximately 129 acres and consisted of two houses, two storage units, a workshop, farmland, and a tree plantation.  Neither of the houses on the New York property was rented in 1994 and 1995.  A portion of the grounds was arable and was farmed by Dan Zittle in 1994 and 1995. Petitioners did not receive any rents on the New York property in 1994 and received $2,326 in rent on the New York property in 1995.  For the New York property, petitioners hired an individual to do simple tasks such as trimming around the buildings and plowing snow from driveways.  Petitioners also hired an excavating contractor, a plumber, and an electrician.

Petitioners claimed rental losses of $45,676 and $51,206 in 1994 and 1995, respectively, on their Schedule E, Supplemental Income and Loss.  Petitioners did not elect to aggregate their real property rental activities for purposes of section 469.

Interest Expense

Respondent examined petitioners' 1989, 1990, and 1991 income tax returns and proposed adjustments to petitioners' Schedule A, Itemized Deductions, and Schedule C, Profit or Loss From

Business, for those years. Respondent determined additional income taxes of $40,076, $34,827, and $28,967 for 1989, 1990, and 1991, respectively.

The Schedule C adjustments arose from the operation of a sole proprietorship, "United Contractors", that was a trade or business. Adjustments to petitioners' 1989 income tax return totaled $125,688, of which $111,515 arose from adjustments to Schedule C. Adjustments to petitioners' 1990 income tax return totaled $106,896, of which $86,082 arose from adjustments to Schedule C. All of the adjustments to petitioners' 1991 income return related to adjustments to Schedule C.

In 1994, petitioners paid interest of $21,979.19 to the U.S. Treasury, of which $18,230.72 and $1,155.78 for 1989 and 1990, respectively, related to adjustments to Schedule C. In 1995, petitioners paid interest of $14,288.90, of which $6,899.63 and $5,721.12 for 1990 and 1991, respectively, related to adjustments to Schedule C.

Petitioners claimed a deduction for "other interest" of $43,874 and $2,887 in 1994 and 1995, respectively, on their Schedule C for interest that related to United Contractors.

Tax Return Preparation

Petitioners' Federal income tax returns were prepared by Thompson Greenspon & Company, P.C., of which Wilbert Thomas Miller III (Miller) is a tax partner. Miller is also a certified

public accountant. Miller discussed with petitioner the qualifications and definition of a real estate professional for purposes of section 469(c)(7), and he inquired about petitioner's involvement in United Air Temp and petitioners' involvement in their real estate rental activities. Form 8275-R, Regulation Disclosure Statement, was prepared and filed with petitioners' 1994 Federal income tax return to disclose that petitioners were taking a position inconsistent with that of the Internal Revenue Service with regard to interest paid on tax deficiencies.

OPINION

Rental Properties

The deductibility of the losses from petitioners' rental properties depends on: (1) Whether petitioner qualifies as a real estate professional under section 469(c)(7) and, if so, (2) whether petitioner materially participated in each rental activity.

Section 469 generally disallows for the taxable year any passive activity loss. Sec. 469(a). A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1). A passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity is treated as a per se passive activity regardless of whether the

- 10 -

taxpayer materially participates. Sec. 469(c)(2), (4). Under section 469(c)(7)(B), the rental activities of a taxpayer in the real property business (real estate professional) are not per se passive activities under section 469(c)(2) but are treated as a trade or business and subject to the material participation requirements of section 469(c)(1). Sec. 1.469-9(e)(1), Income Tax Regs.

Petitioners argue that they are entitled to deduct their losses from their real estate rental properties because petitioner qualifies as a real estate professional under section 469(c)(7) and that the real estate rental activities are a trade or business in which petitioner and Mrs. Fowler materially participated.

Respondent maintains that the real estate rental activities generating a net loss are per se passive activities under section 469(c)(2) because petitioner has not presented adequate evidence to support his assertion that he was a real estate professional pursuant to section 469(c)(7) in either 1994 or 1995 or to support a finding that he and Mrs. Fowler materially participated in each of the real estate activities.

Under section 469(c)(7)(B), a taxpayer qualifies as a real estate professional and is not engaged in a passive activity under section 469(c)(2) if:

> (i) more than one-half of the personal services performed in trades or businesses by the taxpayer

during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the above requirements for qualification as a real estate professional are satisfied if and only if either spouse separately satisfied these requirements. Sec. 469(c)(7)(B). Thus, if either spouse qualifies as a real estate professional, the rental activities of the real estate professional are not a per se passive activity under section 469(c)(2). Instead, the real estate professional's rental activities would be treated as a passive activity under section 469(c)(1) unless the taxpayer materially participated in the activity.

Material participation is defined as involvement in the operations of the activity that is regular, continuous, and substantial. Sec. 469(h)(1). For purposes of determining whether a taxpayer materially participated in a trade or business, this requirement must be met with respect to each interest in rental real estate unless the taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. Sec. 469(c)(7)(A). Petitioner did not make a timely election to treat all interests in rental real estate as a single rental real estate activity. In determining

whether a taxpayer materially participates, the participation of the spouse of the taxpayer shall be taken into account. Sec. 469(h)(5).

Petitioners claim that petitioner spent 1,555.5 hours and 1,052.5 hours in 1994 and 1995, respectively, on rental real estate properties. Petitioners' estimate of the hours of work done on rental properties is based on petitioner's calendar entries, petitioner's estimate of hours spent traveling to and from the rental properties, and petitioners' estimate of hours spent performing administrative work.

Petitioners also claim that petitioner worked at United Air Temp a total of 694 hours and 742.5 hours in 1994 and 1995, respectively, and that all of these hours were related to real property trades or businesses under section 469(c)(7)(D)(ii) because petitioner was an employee of United Air Temp. Petitioners assert that United Air Temp is a real property trade or business under section 469(c)(7)(D)(i) because more than 50 percent of its gross receipts is derived from real property trades or businesses.

Section 469(c)(7)(D)(ii) provides:

> (ii) Personal services as an employee.--For purposes of [qualifying as a real estate professional under] subparagraph B, personal services performed as an employee shall not be treated as performed in real property trades or businesses. The preceding sentence shall not apply if such employee is a 5-percent owner * * * in the employer.

Respondent agrees that petitioner owned more than 5 percent of United Air Temp in 1994 and 1995 and satisfies the requirements of section 469(c)(7)(D)(ii). Thus, petitioner can include personal services performed as an employee of United Air Temp provided that such activities are related to real property trades or businesses. However, respondent argues that petitioner's activities as an employee of United Air Temp are not all related to real property trades or businesses.

Real property trades or businesses are defined in section 469(c)(7)(C) as "any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business." A trade or business includes being an employee. Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979).

We need not decide whether petitioner's personal services as an employee of United Air Temp are related to a real property trade or business or whether United Air Temp is a real property trade or business because petitioner has not established by reasonable means that petitioner spent more than 750 hours in real property trades or businesses.

"Personal Services" generally means "any work performed by an individual in connection with a trade or business". Sec. 1.469-9(b)(4), Income Tax Regs. Work done by an individual

in the individual's capacity as an investor in an activity is not generally treated as participation in the activity. Sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

With respect to the evidence that may be used to establish hours of participation, section 1.469-5T(f)(4), Temporary Income Tax Regs., supra, provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

We believe that the methods that petitioner used to approximate the time that he spent performing services in real property trades or businesses are not reasonable within the meaning of section 1.469-5T(f)(4), Temporary Income Tax Regs., supra. Petitioners' estimates are based on petitioner's calendar entries and do not reliably or reasonably reflect the hours that petitioner actually devoted to United Air Temp or to his rental real estate activities. Petitioner assigned hours to the activities in his calendar before the activities occurred, and his estimates were not later adjusted to reflect the actual duration of the activities. In preparation for trial in 2001,

petitioner made notations on his calendars based on his recollection of the activities occurring in 1994 and 1995. However, these handwritten notations that were prepared years later are not reliable. This Court has previously noted that, while the regulations are somewhat ambivalent concerning the records to be maintained by taxpayers, they do not allow a postevent "ballpark guesstimate". Bailey v. Commissioner, T.C. Memo. 2001-296; Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578. Petitioners attempt to distinguish the facts of this case from those cited by arguing that petitioner's calendars are reliable because the calendars were prepared in advance of his activities for his work at United Air Temp and his rental properties. We conclude that this case and the cases cited are not distinguishable. In any event, petitioners' reconstruction and assertions of time spent are not credible in the context of the types of properties, the amount of rent received, and the services allegedly performed.

Because petitioner does not meet the 750-hour requirement of section 469(c)(7)(B)(ii), he is not a real estate professional for purposes of section 469(c)(7). Therefore, we need not address whether petitioner spent more than 50 percent of his time in real estate trades or businesses under section 469(c)(7)(B)(i).

Because petitioner does not qualify as a real estate professional under section 469(c)(7), petitioners' real estate rental activities are treated as per se passive activities under section 469(c)(2) regardless of material participation by petitioners. See sec. 469(c)(4). Thus, we need not decide whether petitioners materially participated in each real estate rental activity. Even if petitioner were a real estate professional under section 469(c)(7), petitioners would not meet the material participation requirements of section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988), based on the following considerations. Petitioners did not elect to aggregate their real property rental activities and must show that they meet the material participation requirements with respect to each real estate rental property. Petitioners rely on the same calendars, estimates of their travel time, and their personal testimony to prove the hours that they worked on each of their real estate rental properties. Petitioners retained a manager for their apartment building and utilized the services of independent contractors to maintain their rental properties. Petitioners' travel to their Florida property of 168 hours and 84 hours in 1994 and 1995, respectively, appears also to be personal trips to stay at another Florida property owned by petitioners. Petitioners did not spend more than 100 hours on

- 17 -

activities related to the apartment building and commercial building in 1995.

Petitioners made general estimates of the hours that each spent on administrative work, and those estimates were neither supported by calendar entries nor calculated with respect to each real estate rental property. Activities performed by Mrs. Fowler would be aggregated with those of petitioner for purposes of the material participation requirement of section 469(c)(1)(B). See sec. 469(h)(5). However, several of the administrative activities that petitioners performed are investor-related activities and, thus, are not treated as participation in the activity. See sec. 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 25 Fed. Reg. 5697 (Feb. 25, 1988).

Interest

Respondent disallowed petitioner's deductions of $43,874 and $2,887 in 1994 and 1995, respectively, for "other interest" that petitioners claimed on Schedule C for United Contractors. The amounts deducted represent deficiency interest that petitioners paid on tax deficiencies that related to their unincorporated Schedule C business. Respondent's disallowance is based on section 163(h)(2)(A), which generally disallows a deduction for personal interest, and on section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., 52 Fed. Reg. 48409 (Dec. 22, 1987), which

interprets personal interest to include interest paid on individual tax deficiencies.

Section 163(h) generally provides:

SEC. 163.  INTEREST.

*    *    *    *    *    *    *

(h) Disallowance of Deduction for Personal Interest.--

(1) In general.--In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.

(2) Personal interest.--For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

(A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee) * * *

Section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., supra, provides:

Section 1.163-9T.  Personal interest (temporary).--

*    *    *    *    *    *    *

(b) Personal interest--

*    *    *    *    *    *    *

(2) Interest relating to taxes--(i) In general.  Except as provided in paragraph (b)(2)(iii) of this section, personal interest includes interest--

(A) Paid on underpayments of individual Federal, State or local income taxes and on indebtedness used to pay such taxes (within the meaning

of section 1.168-8T), regardless of the source of the income generating the tax liability * * *

Petitioners maintain that they are entitled to deduct their tax deficiency interest as a business expense on their Schedule C because section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., supra, is invalid and interest on indebtedness is properly allocable to a trade or business under section 163(h)(2)(A). Petitioners rely on this Court's opinions in Redlark v. Commissioner, 106 T.C. 31 (1996), revd. 141 F.3d 936 (9th Cir. 1998), and Kikalos v. Commissioner, T.C. Memo. 1998-92, revd. 190 F.3d 791 (7th Cir. 1999), despite their reversal because the appeal in the instant case lies to the Court of Appeals for the Eleventh Circuit, which has yet to address the issue presented here. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Subsequent to trial and the submission of briefs in this case, the Court addressed the same issue with similar facts in Robinson v. Commissioner, 119 T.C. ___ (2002). In Robinson, the Court revisited the issue of whether deficiency interest that taxpayers paid in connection with their unincorporated Schedule C business was deductible. We reconsidered our conclusions in Redlark and Kikalos and held that section 1.163-9T(b)(2)(i)(A), Temporary Income Tax Regs., supra, was valid.

For the reasons set forth in Robinson, we similarly conclude in the instant case that petitioners may not deduct the interest

that they paid with respect to their Federal income tax deficiency.  The interest paid on petitioners' individual tax deficiency is personal interest regardless of the source of the income generating the tax liability.  The Courts of Appeals for the Fourth, Sixth, Seventh, Eighth, and Ninth Circuits have reached the same conclusion.  Kikalos v. Commissioner, 190 F.3d 791 (7th Cir. 1999), revg. T.C. Memo. 1998-92; McDonnell v. United States, 180 F.3d 721, 723 (6th Cir. 1999); Allen v. United States, 173 F.3d 533, 538 (4th Cir. 1999); Redlark v. Commissioner, 141 F.3d 936 (9th Cir. 1998), revg. 106 T.C. 31 (1996); Miller v. United States, 65 F.3d 687, 691 (8th Cir. 1995).

Penalties

Section 6662(a) imposes a 20-percent accuracy-related penalty where the taxpayer's underpayment of tax is attributable to negligence or disregard of rules or regulations.  See also sec. 6662(b)(1).  Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) based on petitioners' negligence or disregard of rules or regulations in the preparation of their 1994 and 1995 tax returns.

Section 1.6662-3(c)(1), Income Tax Regs., provides an exception to the penalties imposed under section 6662(b)(1) when the taxpayer adequately discloses a position contrary to that of

the Internal Revenue Service.  Adequate disclosure includes a properly completed and filed Form 8275-R.  Sec. 1.6662-3(c)(2), Income Tax Regs.  Petitioners filed a Form 8275-R to disclose their position regarding the deductibility of interest.

With respect to the section 469 issue, petitioners did not attempt disclosure and, in any event, the disclosure exception under section 1.6662-3(c)(1), Income Tax Regs., does not apply. Sec. 1.6662-3(c)(1), Income Tax Regs.  We are satisfied from the testimony, however, that petitioners relied on the advice of Miller with respect to the passive activity losses that they claimed.  We conclude that petitioners are not liable for the accuracy-related penalties imposed under section 6662.

We have considered all of the remaining arguments that have been made by petitioners for a result contrary to that expressed herein, and, to the extent not discussed above, they are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent as to the</u>
<u>deficiencies and for</u>
<u>petitioners as to the</u>
<u>accuracy-related penalties.</u>