T.C. Summary Opinion 2017-66

UNITED STATES TAX COURT

KURT HICKAM AND MICHELLE HICKAM, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3901-16S.                    Filed August 17, 2017.

Kurt Hickam and Michelle Hickam, pro se.

<u>Sandeep Singh</u> and <u>Thomas R. Mackinson</u>, for respondent.

SUMMARY OPINION

LEYDEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated December 16, 2015, respondent determined deficiencies in petitioners' Federal income tax of $9,752 and $16,475 for 2011 and 2012, respectively. Respondent also determined accuracy-related penalties under section 6662(a) of $1,950.40 and $3,295 for 2011 and 2012, respectively.

The issues for decision are whether petitioners[2] are: (1) entitled to deduct rental real estate losses for 2011 and 2012 and (2) liable for accuracy-related penalties under section 6662(a) for 2011 and 2012.

Petitioners' rental real estate loss deductions for 2011 and 2012 are limited by the passive activity loss rules in section 469, and they are not liable for an accuracy-related penalty under section 6662(a) for 2011 or 2012.

---

[1](...continued)
Revenue Code in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Michelle Hickam did not appear in Court at trial, but the Court's decision will be binding upon both spouses.

## Background

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in California when they timely filed their petition.

I.   Mortgage Brokerage Services and Loan Origination Services During 2011 and 2012

During 2011 and 2012 Mr. Hickam brokered real estate mortgages and other loans as an independent contractor for a mortgage brokerage company where he was a branch manager. During 2012 Mr. Hickam was also paid wages by an employer for originating loans.[3] In both positions Mr. Hickam's brokered or originated loans were secured by real estate. For 2011 and 2012 Mr. Hickam was a licensed real estate agent, but the record does not show whether he worked as a real estate agent during those years.

During 2011 and 2012 Mr. Hickam brokered and originated mortgage loans for clients to buy real estate; refinance existing loans; and secure reverse mortgages, commercial loans, and, occasionally, construction loans. Mr. Hickam

---

[3]Mr. Hickam did not explain why he was paid as an independent contractor for his role as a branch manager in 2011 and 2012 and as an employee of his employer in 2012.

did not operate, develop, redevelop, construct, reconstruct, or rent real estate in brokering mortgages or originating loans.[4]

When he brokered mortgages and originated loans, Mr. Hickam followed a structured work routine which he referred to as the "Core Coaching System". Under this system he engaged in certain activities on a given day. On Mondays he followed up with realtors as to whether they had had any open houses and client referrals during the preceding weekend. On Tuesdays he called realtors to get file status updates. On Wednesdays he updated clients. On Thursdays he engaged in "referral partner interactions". On Fridays he followed up with realtors to ask whether they needed any materials for their upcoming open houses.

Mr. Hickam's duties also included overseeing one to three other independent contractors and working with processors or assistants on his client files. Occasionally, he would meet with an appraiser or inspect the condition of a property that was to secure a loan.

The company for which Mr. Hickam worked as a branch manager provided him with an office. Mr. Hickam's work hours were flexible, and he was not always required to perform his work at the office.

---

[4]On a handful of occasions over the years Mr. Hickam advised former clients for whom he had brokered a mortgage on how to lease property and reviewed their leases.

During 2011 and 2012 Mr. Hickam did not record the amount of time he spent brokering mortgages and originating loans.

II.     Rental Real Estate Activity During 2011 and 2012

In addition to brokering mortgages and originating loans, Mr. Hickam managed and maintained the following three rental real estate properties (three properties):

| Address | City | State |
|---------|------|-------|
| 1285 Norval Way | San Jose | Cal. |
| 4625 Topaz St. | Capitola | Cal. |
| 918 Del Mar Ave. | San Jose | Cal. |

The properties at 1285 Norval Way (Norval property) and 4625 Topaz Street (Topaz property) were single-family homes, and the property at 918 Del Mar Avenue (Del Mar property) was a nine-unit apartment building. In 2011 and 2012 Mr. Hickam lived approximately two miles from the Norval and Topaz properties. The record does not show who owned the Norval property or the Topaz property during the years at issue.

Mr. Hickam equally owned the Del Mar property with his brother and his parents. However, his brother and his parents did not participate in the management or maintenance of the Del Mar property because they did not reside

in the area. Instead, they paid Mr. Hickam $6,000 per year to look after the property. He reported that amount as "other income" on petitioners' joint Federal income tax returns for 2011 and 2012.

During 2011 Mr. Hickam placed ads to lease the three properties and reviewed lease applications. He met with prospective tenants, obtained their credit reports, called their references and prior landlords, and prepared their leases. After a tenant vacated a property or a unit, Mr. Hickam inspected the property or unit for damage.

Mr. Hickam also periodically inspected the conditions of the three properties during the terms of the leases to see whether the properties had any damage or needed any repairs, spoke with the tenants and the gardeners, and ensured that garbage cans were returned to their appropriate locations after the garbage was collected.

If a property or a unit sustained minor damage, Mr. Hickam would purchase the materials and perform the required repairs. If the property sustained major damage, Mr. Hickam would seek bids, meet with contractors, and oversee the repairs.

Most of the units in the Del Mar property were remodeled during 2011 and 2012. Mr. Hickam took advantage of a unit's turnover to complete its remodeling. Four units and five units turned over in 2011 and 2012, respectively.

Mr. Hickam did not keep contemporaneous records of the hours he spent or the services he performed with respect to the three properties. When the Internal Revenue Service (IRS) audited petitioners' 2011 and 2012 tax returns, and in response to the audit, Mr. Hickam prepared a log of his hours and his services with respect to the three properties.

Sometime after 2011 Mr. Hickam prepared a document titled "Non Contemporaneous Recreation [sic] of Time" (2011 log) with handwritten entries. The 2011 log grouped services with respect to the three properties into five categories: "Del Mar, Norval, Topaz, P.O. Box, and Bills/Paperwork/Bids/Apps". Mr. Hickam wrote the number of hours he estimated he had spent for each category on a particular day of the month. For instance, for Saturday, January 8, 2011, Mr. Hickam wrote that he spent one hour with respect to "Del Mar", one hour with respect to "Norval Way", and two hours with respect to "Bills/Paperwork/Bids/Apps". The 2011 log does not explain the particular services performed in any of the five categories.

The 2011 log also grouped Mr. Hickam's mortgage brokerage services and his loan origination services into six categories: "Pipeline Review, Marketing/Promo, Client Interface, Office/Bills/Documentation, Training/Licensing, and Referral Partners/Phase". As with the entries with respect to the three properties, Mr. Hickam wrote the number of hours he estimated he had spent for each category for a particular day of the month. These entries also do not explain the particular services performed in any of the six categories.

Sometime after 2012 Mr. Hickam prepared a noncontemporaneous calendar for each month (collectively, 2012 calendars). The 2012 calendars contained entries in one-hour increments followed by one word or a two-word phrase. The entries referred to the three properties or Mr. Hickam's mortgage brokerage services and his loan origination services. However, none of the phrases explains the services Mr. Hickam performed.

III.    Petitioners' 2011 and 2012 Tax Returns

Petitioners timely filed their 2011 and 2012 tax returns, reporting gross income of $170,644 and $266,447 for 2011 and 2012, respectively. Mr. Hickam included in each year's reported gross income the $6,000 his brother and his parents had paid him in that year for managing the Del Mar property.

Each included a Schedule E, Supplemental Income and Loss, reporting gross rental income and expenses for the three properties. In those Schedules E petitioners reported net losses for the Norval and Topaz properties and net profits for the Del Mar property. Petitioners did not report any other income from other rental real estate services or other property management services for 2011 or 2012. In their Schedules E petitioners claimed rental real estate loss deductions of $47,730 and $48,945 for 2011 and 2012, respectively, for the three properties.[5] Petitioners attached to their 2011 tax return an election to treat the three properties as one activity.

## Discussion

### I.     Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule

---

[5]In the Schedules E petitioners reported nonpassive income, unrelated to a rental real estate activity, from "KM Hickam Partnership" totaling $126,270 and $71,065 for 2011 and 2012, respectively. Petitioners subtracted the reported net rental real estate losses for the three properties for 2011 and 2012 from the reported partnership income. The resulting net total income of $78,540 and $22,120 for 2011 and 2012, respectively, was reported on line 17 of petitioners' 2011 and 2012 tax returns. Petitioners each filed Schedules SE, Self-Employment Tax, for 2011 and 2012, calculating the self-employment tax on their respective portions of the partnership income. Mr. Hickam did not testify about the work he or Mrs. Hickam had performed for the partnership.

142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Morever, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioners have neither argued that section 7491(a) applies nor established that its requirements are met. The burden of proof remains with petitioners.

II.     Whether Mr. Hickam's Rental Real Estate Activity Was a Passive Activity

Sections 162(a) and 212(1) generally permit a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business or for the production of income. In the case of an individual section 469 generally disallows any current deduction for a passive activity loss. Sec. 469(a)(1)(A), (2)(A). A passive activity loss is equal to the aggregate losses from all passive activities for a taxable year over the aggregate income from all passive activities for that year. Sec. 469(d)(1).[6]

---

[6]The effect of the passive activity loss disallowance rule is that deductions

(continued...)

Generally, a passive activity is any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). Rental activity is generally treated as per se passive regardless of whether the taxpayer materially participates unless the taxpayer qualifies as a real estate professional under the exception provided by section 469(c)(7)(B).[7] See sec. 469(c)(2), (4). If a taxpayer qualifies as a real estate professional, the section 469(c)(2) disallowance does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income, is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1), (7)(A); Fowler v. Commissioner, T.C.

---

[6](...continued)
related to passive activities are allowed against income from passive activities and the excess (i.e., the amount by which the deductions related to the passive activities exceed the income from passive activities) cannot be deducted from income from activities other than passive activities. See Krukowski v. Commissioner, 279 F.3d 547, 549 (7th Cir. 2002), aff'g 114 T.C. 366 (2000).

[7]There is an additional exception under sec. 469(i) allowing the taxpayer to deduct rental real estate losses. Under sec. 469(i), a taxpayer who actively participates in rental real estate activities may deduct up to $25,000 per year for related passive activity losses. See sec. 469(i)(1) and (2). The $25,000 deduction amount begins to phase out when the taxpayer's adjusted gross income (AGI), determined without regard to any passive activity loss (modified AGI), exceeds $100,000 and is phased out entirely when the taxpayer's AGI reaches $150,000. Sec. 469(i)(3). The Court does not need to decide whether petitioners qualify for this exception because petitioners' AGI before the disallowance of the passive activity losses was $170,644 and $266,447 for 2011 and 2012, respectively, which exceeded the $150,000 ceiling under sec. 469(i)(3) for both of the years at issue.

Memo. 2002-223, 2002 Tax Ct. Memo LEXIS 230, at *10-*11; sec. 1.469-9(e), Income Tax Regs.

Whether the disallowed rental real estate loss deductions petitioners claimed for 2011 and 2012 are deductible without limitation under the passive activity loss rules depends on whether Mr. Hickam[8] met the definition of a real estate professional under section 469(c)(7)(B) for the years at issue.

The Court holds that neither Mr. Hickam's mortgage brokerage services nor his loan origination services are performed in a real property trade or business within the meaning of section 469(c)(7)(C), that the hours he spent performing his mortgage brokerage services and his loan origination services are not included for purposes of the real estate professional test, and that he did not meet the definition of a real estate professional under section 469(c)(7)(B) for 2011 or 2012. Therefore, the Court does not need to address the definition of "material participation" set forth in section 469(h).

---

[8]In the case of a joint Federal income tax return, the requirements are met if either spouse separately satisfies the requirements. Sec. 469(c)(7)(B)(ii). Petitioners have conceded that Mrs. Hickam did not engage in any services with respect to the three properties during 2011 or 2012.

A.    Mr. Hickam's Mortgage Brokerage Services and Loan Origination Services

Mr. Hickam argues that the Court should treat his mortgage brokerage services and his loan origination services as performed in real property trades or businesses and any hours he spent performing those services should be included for purposes of satisfying the real estate professional test.  The Court disagrees.

Section 469(c)(7)(C) defines a real property trade or business for purposes of the real estate professional test as follows:

> (C) Real property trade or business.--For purposes of this paragraph, the term "real property trade or business" means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business.  [Emphasis added.]

Mr. Hickam focuses on the word "operation" and argues that his mortgage brokerage services and his loan origination services are performed in trades or businesses in real property operation because the underlying assets in both services are real property.  Mr. Hickam also argues that respondent erred in retroactively applying an IRS Chief Counsel Advice (CCA) issued in 2014 to disallow petitioners' 2011 and 2012 rental real estate loss deductions.  See CCA 201504010 (Dec. 17, 2014) (concluding that a mortgage broker who is a broker of financial instruments is not in a real property brokerage trade or business).

Respondent contends that the statute is clear that mortgage brokerage and loan origination services are not real property trades or businesses. Respondent further contends that the CCA, rather than establishing a new interpretation of the law, correctly relied upon the statute.

Mr. Hickam's mortgage brokerage services and his loan origination services relate to brokering and originating residential and commercial loans and not to the operation or brokerage of real property. The Court holds that neither Mr. Hickam's mortgage brokerage services and his loan origination services constitute real property trades or businesses for purposes of section 469(c)(7)(C). The Court's holding is based on its interpretation of section 469(c)(7)(C) and not on the CCA.

Mr. Hickam's argument that his mortgage brokerage services and his loan origination services are performed in trades or businesses in "real property operation" because the underlying assets are real property is too attenuated. His argument ignores the words "real property" that precede the specific activities listed in the statute; those words modify each of those activities, including "operation". Although the loans he brokered and originated were secured by real property, Mr. Hickam's mortgage brokerage services and his loan origination services did not involve operating the real properties that secured those loans.

Further, while Mr. Hickam's mortgage brokerage services constitute a "brokerage" trade or business, they does not constitute a "real property brokerage" trade or business. Mr. Hickam did not broker real estate during either year at issue. Rather, he brokered loans between buyers and financial institutions.

The legislative history of the statute supports the consequence of this distinction. Congress considered including "finance operations" in the activities listed in section 469(c)(7)(C) but specifically did not do so. See H.R. 2264, 103d Cong., sec. 13143 (1993); H.R. 1414, 102d Cong. (1991); S. 1257, 102d Cong. (1991); H.R. 3732, 101st Cong. (1989); S. 2384, 101st Cong. (1989).

Mr. Hickam relies on Perez v. Commissioner, T.C. Memo. 2010-232, 2010 Tax Ct. Memo LEXIS 270, to argue that a loan agent qualifies as a real estate professional and therefore a mortgage broker qualifies as a real estate professional. Mr. Hickam's reliance on Perez is misplaced. In Perez, the taxpayer was a self-employed real estate loan agent and broker for the year at issue and reported her income and deductions in a Schedule C, Profit or Loss From Business. Id., 2010 Tax Ct. Memo LEXIS 270, at *2. She also owned three residential real estate properties independent of her profession as a real estate loan agent and broker. Id. She deducted a loss from the three residential rental properties in a Schedule E. Id.

The parties in that case agreed that during the tax year at issue the taxpayer was a real estate professional under section 469(c)(7)(B) with respect to the three residential rental properties she owned independent of being a real estate loan agent and broker.  Id.  As a result, the Court was asked to decide whether the taxpayer was subject to and had to satisfy the "material participation" requirement set forth in section 469(h).  Id. at *4-*5.  The Court did not consider whether the taxpayer's services as a real estate loan agent and broker constituted a real property trade or business for purposes of section 469(c)(7)(B) because the parties had agreed on that issue.  See id. at *2.  In this case the parties have not agreed, and the Court must consider the issue.  Perez does not support petitioners' argument.

Mr. Hickam neither operated real property nor brokered real property as part of his mortgage brokerage services and his loan origination services.  Accordingly, the Court holds that neither service constitutes a real property trade or business.

### B. Mr. Hickam's Qualification As a Real Estate Professional

To qualify as a real estate professional a taxpayer must own at least one interest in rental real estate and meet both tests under section 469(c)(7)(B).[9]  The

---

[9]In applying the two tests the taxpayer may elect to treat all interests in rental real estate as one activity.  Sec. 469(c)(7)(A) (flush language).  Petitioners

(continued...)

first test requires that "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates." Sec. 469(c)(7)(B)(i). The second test requires that the taxpayer perform more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(ii). Failure to satisfy either test for 2011 or 2012 means for the corresponding year that Mr. Hickam was not a real estate professional and that the losses from Mr. Hickam's rental real estate activity are not deductible under the section 469(c)(7)(A)(i) exception to the passive activity loss limitations.

On the basis of the record the Court determines that Mr. Hickam's rental real estate activity with respect to the three properties constituted a real property trade or business for 2011 and 2012. See sec. 469(c)(7)(C). However, petitioners have failed to prove how much time Mr. Hickam spent on his rental real estate activity during 2011 and 2012.

---

[9](...continued) elected with their 2011 tax return to treat the three properties as one activity for 2011. See sec. 1.469-9(g)(1), Income Tax Regs. ("This election is binding for the taxable year in which it is made and for all future years".). The election was also effective for 2012. See id. Therefore, the Court applies the tests under sec. 469(c)(7)(B) to Mr. Hickam's combined rental real estate activities for the three properties.

To satisfy the first test under section 469(c)(7)(B)(i), petitioners have to prove how much time Mr. Hickam spent on his mortgage brokerage services and his loan origination services--his other personal service trades or businesses--in 2011 and 2012. To satisfy the second test petitioners have to prove that Mr. Hickam performed more than 750 hours of services in 2011 and 2012 in real property trades or businesses in which he materially participated. The Court holds that petitioners have not met their burden of proving that Mr. Hickam satisfied the two tests under section 469(c)(7)(B) to meet the definition of a real estate professional for 2011 or 2012.

A taxpayer may use any reasonable means to establish his hours of participation. Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). "Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means." Id. Reasonable means "may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries." Id. The Court has observed that the regulations "concerning the records to be maintained by taxpayers * * * by no means allow a postevent 'ballpark guesstimate'". Carlstedt

v. Commissioner, T.C. Memo. 1997-331, 1997 Tax Ct. Memo LEXIS 390, at *24 (citing Speer v. Commissioner, T.C. Memo. 1996-323).

Using the 2011 log and the 2012 calendars, Mr. Hickam testified that he had performed 1,583 and 1,200 hours of services in 2011 and 2012, respectively, with respect to his mortgage brokerage services and his loan origination services and 836 and 759 hours of services in 2011 and 2012, respectively, with respect to the three properties. Mr. Hickam began reconstructing the hours of services he performed with respect to the mortgage brokerage services and the loan origination services and the three properties after his 2011 and 2012 tax returns were audited. He prepared the 2011 log and the 2012 calendars in response to the audit. Mr. Hickam testified that he had created the 2011 log and the 2012 calendars using leases, bank statements, checkbooks, bills, and receipts to reconstruct the amount of time he spent leasing, operating, and maintaining the three properties, but he did not present any of this corroborating evidence at trial. Mr. Hickam also testified that his accountant had suggested he estimate the amount of time for each activity performed to prepare the 2011 log and the 2012 calendars.

According to respondent the 2011 log and the 2012 calendars are not reliable and therefore do not establish the amount of time Mr. Hickam dedicated to

his mortgage brokerage services and his loan origination services or the three properties. The Court agrees with respondent and does not find the 2011 log or the 2012 calendars to be reliable. They were prepared well after the years at issue with vague, nondescriptive entries and ballpark estimates of the time dedicated to the three properties.

Petitioners did not provide any other credible evidence[10] to support Mr. Hickam's testimony that he had performed 1,583 hours and 1,200 hours of services in 2011 and 2012, respectively, with respect to his mortgage brokerage services and his loan origination services and 836 and 789 hours of services in 2011 and 2012, respectively, with respect to the three properties.

A taxpayer's uncorroborated testimony need not be relied upon. Bailey v. Commissioner, T.C. Memo. 2001-296, 2001 Tax Ct. Memo LEXIS 332, at *16. The Court is not required to accept unverified testimony of taxpayers in the absence of adequate documentation. See, e.g., Lum v. Commissioner, T.C. Memo. 2012-103, 2012 Tax Ct. Memo LEXIS 102, at *9; Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185, 2010 Tax Ct. Memo LEXIS 221, at *35.

---

[10]Even though the parties stipulated leases for the units in the Del Mar property, the leases did not provide any indication of the amount of time Mr. Hickam devoted to the respective units listed for the property.

While the Court believes that Mr. Hickam dedicated time to his mortgage brokerage services, his loan origination services, and the three properties during the years at issue, he did not persuade the Court that the amount of time he listed on the 2011 log and the 2012 calendars accurately represented his hours of services for 2011 or 2012.

Petitioners have failed to sustain their burden of proving that Mr. Hickam was a real estate professional for 2011 or 2012. Accordingly, petitioners may not deduct the rental real estate losses claimed on their 2011 or 2012 tax return under the real estate professional exception provided under section 469(c)(7).

## III.    Section 6662(a) Accuracy-Related Penalties

Respondent determined accuracy-related penalties for 2011 and 2012 because petitioners' underpayments were due to substantial understatements of income tax or negligence or disregard of rules and regulations. Sec. 6662(a) and (b)(1) and (2). Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one type of conduct listed in section 6662(b). See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 F. App'x 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs. Nevertheless, the Court considers both grounds for imposition of the penalty.

Under section 7491(c) the Commissioner bears the burden of production with regard to the liability of individuals for penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). To meet that burden the Commissioner must produce sufficient evidence to show that it is appropriate to impose the accuracy-related penalty. See id. As explained below the Court concludes that respondent has met his burden of production with respect to a substantial understatement of income tax under section 6662(b)(2) or, in the alternative, with respect to negligence or disregard of rules or regulations under section 6662(a) and (b)(1), for 2011 and 2012.

Once the Commissioner meets his burden of production, a taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 447. The taxpayer may meet this burden by proving that he or she acted with reasonable cause and in good faith with respect to the underpayment. See sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 447; sec. 1.6664-4(b)(1), Income Tax Regs. As explained below, petitioners provided persuasive evidence that they acted with reasonable cause and in good faith with respect to the underpayment of tax for 2011 and 2012.

A.    Substantial Understatement

The Court has sustained the disallowed deductions in the notice of deficiency for 2011 and 2012.  The result is a substantial understatement of income tax for 2011 and 2012.  An "understatement" means the excess of the amount of the tax required to be shown on the tax return over the amount of tax that is shown on the tax return, reduced by any rebate.  Sec. 6662(d)(2)(A).  There is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A).

Petitioners' 2011 tax return showed a tax of $18,358.  Respondent determined the amount of tax required to be shown on petitioners' 2011 tax return was $28,110.  Thus, the understatement of tax that respondent determined for 2011 was $9,752.  That amount exceeds $5,000, which is greater than $2,811.80, 10% of the tax required to be shown on petitioners' 2011 tax return.

Petitioners' 2012 tax return showed a tax of $39,244.  Respondent determined the amount of tax required to be shown on petitioners' tax return was $55,719.  Thus, the understatement of tax that respondent determined for 2011 was $16,475.  That amount exceeds $5,571.90, 10% of the tax required to be shown on petitioners' 2012 tax return, which is greater than $5,000.

Therefore, petitioners have substantially understated their income tax for 2011 and 2012 and are liable for the accuracy-related penalties under section 6662(a) and (b)(2) for 2011 and 2012.

B.     Negligence or Disregard of Rules or Regulations

The accuracy-related penalty may also be imposed under section 6662(a) because of negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  In the alternative petitioners are liable for the accuracy-related penalties for 2011 and 2012 because they were negligent and disregarded rules or regulations.

Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); see Higbee v. Commissioner, 116 T.C. at 448; sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Neely v. Commissioner, 85 T.C. 934, 947 (1985).  "Disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c); see Higbee v. Commissioner, 116 T.C. at 448.

Respondent has met his burden of production with respect to petitioners' negligence and disregard of rules or regulations because Mr. Hickam failed to

maintain adequate records to substantiate the rental real estate loss item underlying the deduction for 2011 or 2012.

C.      Reasonable Cause for the Underpayment of Tax

A penalty will not be imposed under section 6662(a), however, if a taxpayer establishes that he or she acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances.  Sec. 1.6664-4(b), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 449.  Relevant facts and circumstances for the Court to consider include the knowledge and experience of the taxpayer.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners argued that they relied in good faith on their accountant's recommendation and that this reliance was reasonable cause for their underpayment of tax for 2011 and 2012.  The question of whether Mr. Hickam was a real estate professional was partially resolved on technical grounds--whether his mortgage brokerage services and loan origination services constituted real property trades or businesses under section 469(c)(7)(C).  Although the Court found that neither service constituted a real property trade or business and notwithstanding his failure to maintain adequate records, the Court finds that Mr.

Hickam acted reasonably and in good faith in taking that position for the years at issue. Petitioners are therefore not liable for a section 6662(a) accuracy-related penalty for 2011 or 2012.

The Court has considered all of the parties' arguments, and, to the extent not addressed herein, the Court concludes they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent as to the deficiencies and for petitioners as to the section 6662(a) penalties</u>.